UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| SARAH S. JOHNSON,<br><br>    Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>    Respondent. | Case No.: 1:15-cv-00151-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before this Court is Petitioner Sarah S. Johnson's Petition for Review, seeking review of the Social Security Administration's final decision to deny her benefits under the Social Security Act.  *See generally* Pet. for Review (Docket No. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

Sarah S. Johnson ("Petitioner") filed her claims for supplemental security income (SSDI) and child disability benefits on February 28, 2012 and March 16, 2012, respectively – in both applications, Petitioner alleged disability beginning December 21, 1993.  These claims were initially denied on June 20, 2012 and, again, on reconsideration on September 18, 2012.  On November 8, 2012, Petitioner timely filed a Request for Hearing before and Administrative Law Judge ("ALJ").  On August 14, 2013, ALJ John T. Molleur held a hearing in Boise, Idaho, at which time, Petitioner (unrepresented at the time) appeared and testified.  Impartial vocational expert, Polly A. Peterson, also appeared and testified during the same August 14, 2013 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On December 5, 2013, the ALJ issued a Decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on December 20, 2013, at that time, submitting new evidence which was accepted into the record. On March 4, 2015, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, alleging:

> It is Petitioner's contention that the denial of her disability claim is not supported by substantial evidence under the standards set forth by 42 U.S.C. § 405(g) and all other applicable laws and regulations, including the weight of the evidence, her credibility, the medical opinions of her doctors, and any and all other applicable evidentiary issues, both in law and in fact . . . .

Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner argues that (1) the ALJ's denial of benefits is not supported by substantial evidence in the record in light of the evidence submitted to the Appeals Council; (2) that evidence is new and material; and (3) the ALJ's unfocused conduct at the August 14, 2013 hearing was contrary to his obligation to assist an unrepresented claimant in the presentation of her claim. *See* Brief in Supp. of Pet. for Review, p. 3 (Docket No. 16). Petitioner therefore requests that the denial of her claim should be reversed or remanded for further administrative proceedings. *See* Pet. for Review, p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 21, 1993, the application date. (AR 12).

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairment: "mood disorder, not otherwise specified." (AR 12-13).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 13-14).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 5**

relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: work is limited to uninvolved three to four step tasks only; only brief and incidental contact with members of the general public; no work in close coordination with others, but can tolerate proximity to others."  (AR 14-18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Petitioner has no past relevant work.  (AR 18).  However, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including chicken farm laborer, cheese cutter, and silver wrapper.  (AR 18-19).  Therefore, based on Petitioner's age, education, work experience, and RFC, the ALJ concluded that Petitioner

**MEMORANDUM DECISION AND ORDER - 6**

"has not been under a disability, as defined in the Social Security Act, from December 21, 1993, through the date of this decision."  (AR 19).

## B.    The Evidence Submitted to the Appeals Council Following the ALJ's December 5, 2013 Decision Calls Into Question the ALJ's Disability Determination

After the ALJ issued his Decision, Petitioner submitted additional evidence to the Appeals Council – an April 17, 2013 Psychological Evaluation from Licensed Psychologist, Jeff Clausel, Ph.D.  (AR 326-37).  Petitioner contends that the Evaluation confirms that she suffers from a personality disorder that was never considered by the ALJ, arguing:

> There can be no reasonable dispute that Dr. Clausel's detailed report, which includes an exam, testing, and a new diagnosis, is both new and material.  It was not in the record before the ALJ and pertains directly upon Ms. Johnson's mental impairments, bizarre behavior, and inappropriate social functioning.  Dr. Clausel conducted his examination in April 2013, which was 8 months prior to the ALJ's decision, and is therefore within the adjudicated time period.  Moreover, this new evidence confirms speculation by Ms. Johnson's treating sources that she had a personality disorder.  Treatment records indicate that Dr. van der Eijk at Lifeways Counseling had deferred a diagnosis with respect to Ms. Johnson's personality disorder.  Ms. Johnson also reported being told she had a personality disorder.  Likewise, the Agency's examining expert, who examined Ms. Johnson 10 months prior to Dr. Clausel's examination, found impaired judgment and deferred an Axis II diagnosis on Ms. Johnson.
>
> Dr. Clausel's assessment is relevant and probative to Ms. Johnson's mental impairments and ability to work.  His diagnosis of personality disorder was not considered by the ALJ.  Finally, given the detailed assessment of Dr. Clausel and its consistency with the other evidence in the record, particularly the deferred diagnosis of other psychologists, there is a "reasonable probability" that this evidence alone or in conjunction with the other evidence would change the outcome of this case.  For instance, the Agency's consultative psychological examiner, whose evaluation did not include any standardized psychological testing and is plainly far less thorough than that of Dr. Clausel, "deferred" with respect to the existence of a personality disorder on Axis II, noted her history of ADHD and added that she had "some impairment of her memory for verbally mediated materials" and "may be impulsive at times."  Plainly, Dr. Clausel's assessment establishes far more mental limitation than "impulsive at times."
>
> The point being that this evidence is the first evidence of its kind in the record and provides a far more thorough picture of Plaintiff's psychological deficits. . . . .

**MEMORANDUM DECISION AND ORDER - 7**

*See* Brief in Supp. of Pet. for Review, pp. 9-10 (Docket No. 16) (internal citations omitted). After taking into account Dr. Clausel's Evaluation (and the diagnosis of Petitioner's personality disorder contained therein), the original justification for the ALJ's disability determination appears to be incomplete.

Preliminarily, the Appeals Council is required to consider new evidence, so long as it is "material" to the issues that were before the ALJ, and it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."). The parties agree that Dr. Clausel's Evaluation is now part of the administrative record and, accordingly, must be considered alongside the ALJ's underlying disability determination and supplied rationale. *Compare* Brief in Supp. of Pet. for Review, pp. 3-5 (Docket No. 16), *with* Def.'s Brief, p. 2 (Docket No. 17).[1]

---

[1] Petitioner states that the Appeals Council "rejected Ms. Johnson's appeal with the conclusory statement 'we found that this information does not provide a basis for changing the [ALJ's] decision.'" Brief in Supp. of Pet. for Review, p. 3 (Docket No. 16) (quoting (AR 2)). To the extent this amounts to a critique directed at the Appeals Council, it is unfounded. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner."). In *Taylor*, the Ninth Circuit found that when the Appeals Council considers additional evidence from a treating physician, but denies review, the Council need not provide a "detailed rationale" or make any evidentiary findings for why it rejected the opinions. *See id*. at 1231-32 (citing *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996)). Thus, while the Appeals Council was required to consider Dr. Clausel's Evaluation in assessing whether to grant review, it was not required to provide a detailed explanation for why such evidence did not warrant review of the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 8**

Here, the ALJ determined that Petitioner's only severe impairment was a "mood disorder, not otherwise specified." (AR 12-13). But, the ALJ never considered whether Petitioner may have also suffered from a personality disorder. This is so because none of the medical providers referenced within the ALJ's decision ever commented upon the existence of any personality disorder (beyond references to Petitioner herself stating that she had been diagnosed with a personality disorder); in fact, each of them specifically "deferred" making any such diagnosis. *See, e.g.*, (AR 303) (consultative examiner, David R. Starr, Ph.D., deferring Axis II diagnosis); (AR 313-14) (Payette Counseling & Psychiatric Services, LLC's Jennifer Eason-Barnett, LCSW, deferring Axis II diagnosis and ruling out "borderline intellectual funct[ioning]"); (AR 324-25) (Lifeways, Inc.'s Louise van der Eijk, LPC Ph.D., stating "Diagnosis Deferred on Axis II").[2]

It therefore is no wonder that the ALJ did not find that Petitioner also suffered from a personality disorder – it was only Dr. Clausel's Evaluation (submitted for the first time *after* the August 14, 2013 hearing) that spoke directly to that otherwise-unaddressed issue. And, in that respect, Dr. Clausel unequivocally diagnosed Petitioner with "Atypical Cluster B Personality Disorder, with Antisocial, Borderline, and Passive-Aggressive Features." (AR 336); *see also id.* ("The results of this evaluation described Ms. Johnson as a distinctly characterological young woman with mild reading disabilities who did not show signs today of "ADHD" or "Bipolar Disorder," but who showed clear evidence of Cluster B Personality Disorder with distinctly Antisocial-Borderline Passive Aggressive Features."). Still, the ALJ never considered this diagnosis when determining whether Petitioner was disabled under the Social Security Act.

---

[2] Dr. van der Eijk's treatment notes indicate that she reviewed Dr. Clausel's Evaluation and discussed its findings with Petitioner. *See* (AR 316-17). At no point in time does Dr. van der Eijk's question Dr. Clausel's conclusions. *See id*.

**MEMORANDUM DECISION AND ORDER - 9**

Respondent's only substantive retort on this point attempts to question the import of Dr. Clausel's Evaluation, arguing that it, in fact, fails to indicate that Petitioner suffered impairments other than a mood disorder. *See* Def.'s Brief, p. 3 (Docket No. 17) ("Although Plaintiff does not explicitly say so, she seems to imply that Dr. Clausel's Evaluation undermines the ALJ's step two finding, because it shows that she had additional impairments. Dr. Clausel's report does no such thing."). To be sure, Respondent claims that Dr. Clausel's test results indicated significant impulsivity that was characterized by a variable effort on various testing instruments. *See id*. at p. 3 ("When asked to identify Plaintiff's diagnoses, Dr. Clausel first pointed out that '[s]ignificant under-motivation was suspected,' undermining the reliability of the testing he conducted. The testing, subject to Plaintiff's apparent manipulation, does not undermine the ALJ's findings.") (quoting (AR 336)). The undersigned does not share Respondent's critique.

It is true that Dr. Clausel repeatedly commented upon Petitioner's lack of effort during testing. *See, e.g.*, (AR 331, 333-36). But, rather than subvert Dr. Clausel's assessment that Petitioner suffers from a personality disorder, these realities have the opposite effect – they go *hand-in-hand* with that diagnosis. *See generally* (AR 336) (Dr. Clausel acknowledging Petitioner's "significant under-motivation" while diagnosing her with Atypical Cluster B Personality Disorder, with Antisocial, Borderline, and Passive-Aggressive Features); *see also* Pl.'s Reply Brief, pp. 3-4 (Docket No. 18) (". . . What Defendant interposes as evidence that undermines Dr. Clausel's assessment is actually *the very same evidence* that he pointed to as supporting his conclusions.") (emphasis in original).

What is left, then, is a disability determination that did not consider (indeed, could not have considered) all of the relevant medical evidence. That evidence included a diagnosis of a

**MEMORANDUM DECISION AND ORDER - 10**

personality disorder that may, or may not, impact whether Petitioner is disabled under the Social Security Act.  As a result, based upon the unsettled record now before the Court, and the standards that must be applied when confronted with such a situation, it cannot be said as a matter of law that substantial evidence exists to support the ALJ's finding that Petitioner is not disabled.  Remand is therefore appropriate on this discrete issue to determine what impact, if any, Dr. Clausel's Evaluation has on steps two, three, and four of the sequential process.[3]

C.      **The ALJ's Development of the Record Was Appropriate**

"In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d

---

[3] It should be noted that the context surrounding Dr. Clausel's Evaluation creates some level of uncertainty.  That is, the Evaluation was the product of a request from the Oregon Department of Human Services/Malheur County Child Welfare Programs for the purposes of determining Petitioner's fitness to care for her child.  *See* AR (327) ("In her referral letter of 04/09/13, Ms. Ireland reported that 'Ms. Johnson came to the attention of Child Welfare on March 18, when there was bruising which appeared to be bite marks on her 11-month-old son's, Malikiah Johnson, buttocks and breasts.'"); *see also* (AR 326) (identifying referral questions as: "(1) What is Ms. Johnson's DSM diagnosis and level of functioning? (2) What are Ms. Johnson's parenting abilities? (3) What services would be best to enhance Ms. Johnson's parental capacities? (4) What is necessary for Ms. Johnson to achieve long-term stability? [and] (5) What is Ms. Johnson's ability to keep child safe long-term?").  In turn, the Evaluation's findings related to a setting that assessed Petitioner's abilities as a parent.  Whether, or to what extent, those (in)abilities translated to work-related functional/mental limitations informing a disability determination is not clear.  In other words, do shortcomings that may have existed in terms of Petitioner's capacity to care for her child (identified in terms of a personality disorder) imply that she is incapable of working?  Said another way: Is this an apples-to-apples comparison?  Alas, this is unclear, especially when realizing that Dr. Clausel suggested that (1) Petitioner could benefit (if she could "be honest about what happened to her child") from "assistance in becoming *employed on a full-time, self-sustaining basis*"; and (2) among other things, "*occupational viability*" was necessary for Petitioner to achieve long-term stability.  (AR 336-37) (emphasis added).  Unfortunately, the record is too underdeveloped to understand what Dr. Clausel actually means and how his recommendations can be synthesized together, if at all, with ALJ's conclusions so as to find here and now that substantial evidence exists to support the ALJ's disability determination.

**MEMORANDUM DECISION AND ORDER - 11**

441, 443 (9th Cir. 1983). This duty exists when the claimant is represented by counsel, or when appearing *pro se*. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288). Here, Petitioner argues that the ALJ's conduct during the August 14, 2013 hearing violated his obligation to fully and fairly develop the record in two respects: (1) by not repeating questions focused on the existence of additional medical evidence, Dr. Clausel's Evaluation would have been identified during the hearing itself; and (2) the ALJ failed to conduct a focused inquiry of Petitioner's ability to perform work-related activities. *See generally* Brief in Supp. of Pet. for Review, pp. 10-15 (Docket No. 16).

These arguments do not supply a basis for remanding the action. To begin, any argument surrounding questions at the hearing that, if pursued, might have uncovered the existence of Dr. Clausel's Evaluation are now moot because of the remand dealing with the substance of such additional evidence itself. *See supra*.

Separately, notwithstanding the issues surrounding the availability Dr. Clausel's Evaluation at the time of the hearing (and its corresponding effect, if any, on the ALJ's ultimate disability determination (*see id.*)), the undersigned is satisfied that any alleged shortcomings in the ALJ's inquiry of Petitioner do not create the ambiguity necessary to trigger further development of the record. The record before the ALJ already contained assessments of Petitioner's capacity to perform work-related functions and, likewise, already provided the basis to test Petitioner's credibility. *See* (AR 17) ("The medical evidence of record does not entirely

**MEMORANDUM DECISION AND ORDER - 12**

support the credibility of the claimant's allegations regarding her impairments. The objective medical findings reveal some limitations, but not to the extent alleged by the claimant."). Therefore, the ALJ was not obligated to further develop the record as Petitioner contends.

## IV.  CONCLUSION

The ALJ is the fact-finder and solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

However, new evidence in the form of Dr. Clausel's Evaluation could change the complexion of this case. This is not to say that Dr. Clausel's Evaluation is not subject to challenge itself, and the Evaluation is still only part of a larger array of other medical evidence in the record, the sum of which the ALJ is best positioned to consider and weigh. Accordingly, this matter is remanded for further consideration by the ALJ.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED, pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ may consider the new evidence from Dr. Clausel and conduct any other proceedings necessary to determine whether Petitioner has met her burden of proof with respect to showing that her mental impairments are disabling.

DATED:  **September 30, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**